## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **RICHARD MEYER, on behalf of himself and all others similarly situated,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**THE MASSACHUSETTS BAY TRANSIT AUTHORITY, LAZ PARKING LIMITED, LLC, AND COMPLUS DATA INNOVATIONS, INC.**<br><br>**Defendants.** | **CASE NO. _____**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## I.      INTRODUCTION

1.      Plaintiff brings this action on behalf of himself and a class of drivers who have parked at "Honor Box" commuter rail lots managed by LAZ Parking Limited, LLC ("LAZ Parking") for the Massachusetts Bay Transit Authority ("MBTA").

2.      By this action, Plaintiff seeks to prevent the Defendants from continuing to demand and collect payments and penalties for questionable years-old parking violations by a flawed process that fails to provide a fair opportunity to contest the amounts claimed due.  He also seeks to prevent the Defendants from continuing to use termination of vehicle registrations, towing and/or immobilization as a lever to coerce payments.

## II.      JURISDICTION

3.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331 because this civil action arises under the Constitution and federal law.

4.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §1343 because this civil action arises under 42 U.S.C. §1983.

5.      The Court has jurisdiction under the Declaratory Judgment Act, 28 U.S.C. §2201.

6.      Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because the unlawful practices are alleged to have been committed in this District, the MBTA is headquartered in this District, LAZ Parking and Complus Data Innovations, Inc., ("Complus") regularly conduct business in this District, and the named Plaintiff resides in this District.

### III.     PARTIES

7.      Plaintiff, Richard Meyer, is an individual who resides in Brockton, Massachusetts.

8.      Defendant, the MBTA, is a "…body politic and corporate, and a political subdivision of the commonwealth…" M.G.L. c. 161A §2. It is headquartered in the Massachusetts State Transportation Building located at 10 Park Plaza, Boston, Massachusetts 02116.

9.      The Massachusetts Legislature created the MBTA by special law for the purpose of furthering governmental objectives, namely, providing mass transportation services to Massachusetts communities.  M.G.L. c. 161A, §3(i).

10.     For the purposes of this complaint, the MBTA is acting under the color of state law when attempting to collect and collecting on alleged past due parking violations

based on its authority to enforce parking violations under M.G.L. c. 161A §46 and M.G.L. c. 90 Section 20A.[1]

11.     Defendant, LAZ Parking Limited, LLC, is a limited liability corporation doing business in Massachusetts. LAZ Parking maintains a principal place of business located at 4 Copley Place, Suite 4400A, Boston, Massachusetts 02116.

12.     LAZ Parking has a dedicated Government Services Division and operates commuter rail parking lots owed by the MBTA. Its services include, without limitation, parking payment cash collection, counting, depositing and auditing, and enforcement operations.[2]

13.     LAZ Parking is acting under the color of state law as a contractor for the MBTA with custodial authority that provides parking payment collection and enforcement services at MBTA-owned parking lots that the MBTA is statutorily authorized to control under Massachusetts law.

14.     Defendant, Complus Data Innovations, Inc. is a corporation doing business in Massachusetts. Complus' principal place of business is located at 560 White Plains Road, Tarrytown, New York, 10591.

---

[1] MGL c. 161A §46 provides, in relevant part, "The [MBTA] may promulgate rules and regulations pertaining to the parking of motor vehicles in any…parking lot[]…owed or operated by the authority…." "The authority may…adopt the provisions of section 20A of chapter 90…" MGL c. 90 §20A governs the enforcement of parking violations and the dispute process, and provides, in relevant part, that the authority may hire personnel or contract for services necessary to carry out these provisions. The MBTA has adopted these provisions.
[2] LAZ Website, Government and Municipal, *available at* http://www.lazparking.com/our-company/parking-management-services/government-and-municipal (Last visited on August 25, 2014).

15.     Complus, as the MBTA's contractor hired to enforce parking violations through collecting alleged past due parking tickets, is acting under the color of state law because it is exercising power possessed by the MBTA under Massachusetts law.

16.     Complus is acting under color of state law because its collection letters have the MBTA logo on it; it is therefore clothing itself with the authority of state law.

17.     At all time relevant to this Complaint, LAZ Parking and Complus were either agents of the MBTA or were independent contractors acting under the MBTA's direction and control.

## IV.     CIVIL CONSPIRACY

18.     Defendants have knowingly and willfully conspired by acting in concert and in furtherance of a common design and agreement, to accomplish the wrongs complained of herein.

19.     The purpose and effect of the conspiracy is to financially benefit Defendants at the expense of Plaintiff and the class.

20.     Defendants have accomplished their conspiracy by jointly creating and implementing a flawed parking payment enforcement scheme designed to coerce money from Plaintiff and class members that Defendants cannot prove is owed by use of an aggressive collection campaign and under threat of imposing further monetary penalties and preventing Plaintiff and class members from using or registering their vehicles.

21.     Each Defendant was a direct, necessary and substantial participant in the conspiracy and is aware of its overall contribution to and furtherance of the conspiracy.

22.     Defendants are jointly liable for the misconduct constituting the torts of abuse of process and conversion described herein.

23.     In the alternative, Defendants are jointly liable because, acting in unison, they have the power to coerce Plaintiff and the class into paying money, which power Defendants would not have had if they were acting independently.

24.     Such coercive power is derived from a combination of each Defendants' particular misconduct, namely, LAZ Parking's mismanagement of the flawed Honor Box system and issuance of invalid parking tickets, coupled with the MBTA's delegation of its commuter lot management responsibilities with no oversight and poor record keeping, and Complus' aggressive collection campaign designed to force Plaintiff and class members to pay amounts they do not owe under threat of losing use of their vehicles.

25.     Each of the Defendants profits from the conspiracy.

## V.     FACTUAL BACKGROUND AND ALLEGATIONS

26.     To raise revenue, the MBTA, through its contracted collection agency, Complus Data Innovations, Inc., ("Complus") recently launched a collection campaign that amounts to nothing more than a fishing expedition intended to coerce drivers into paying fines and penalties for alleged past due parking tickets that date back to as early as 2009.

27.     Starting in November, 2013, Complus, using the MBTA's letterhead, began mass mailing tens of thousands of form collection letters to drivers who have parked at its commuter rail parking lots that used the "Honor Box" system demanding fines and penalties for alleged past due parking tickets.

28.     The MBTA and Complus sent the collection letters even though the MBTA and LAZ Parking, contracted by the MBTA to manage commuter rail parking lots, have not maintained sufficient systems in place to know whether drivers paid for parking.

5

29.     During the time period in which the alleged tickets were issued, the MBTA utilized a cash-based system for drivers to pay for parking at certain of its commuter rail parking lots, called the "Honor Box" system.

30.     The Honor Box system, which by its very nature was intended to operate based on trust, had no mechanism for drivers to obtain a receipt to prove they paid for parking.

31.     After parking, drivers inserted cash to pay the advertised parking fee (typically $4.00), in a slot in a metal box near the gate to the lot that was designated for the applicable parking space.  A picture of a typical Honor Box is below:



32.     The MBTA delegated the management of the Honor Box parking lots to a third party, LAZ Parking Limited, LLC ("LAZ Parking"), and did not provide

meaningful oversight or controls to ensure LAZ Parking properly and accurately collected and accounted for the cash payments.

33.     The MBTA knew that its Honor Box system was flawed; both the MBTA and LAZ Parking are aware of many instances in which drivers claimed to have received a ticket despite having paid for parking, and, the MBTA now provides alternative systems to pay for parking, such as the Pay By Phone system, which is more reliable. *See*, *e.g.*, Martine Powers, *Tips For Fighting Parking Violations, Boston Globe*, December 22, 2013, *available at*, http://www.bostonglobe.com/metro/2013/12/22/commuters-fight-mbta-parking-lot-violation-notices/h3ykD06pX1aVtn05njmSqN/story.html (last visited on August 25, 2014); Rob Anderson, Op-Ed., *Good riddance: The end of the MBTA honor* box, Boston Globe, Jan. 12, 2011, *available at* http://www.boston.com/bostonglobe/editorial_opinion/blogs/the_angle/2011/01/mbta_enforcemen.html (Last visited on August 25, 2014) ("...[drivers] are complaining that even when they *have* paid for parking in MBTA lots, officials have targeted them with parking violations….[this] experience seems to be a common one.") (emphasis in original); Karen Anderson, *I-Team: Commuters Say They're Being Ripped Off In MBTA Parking Lots*, CBS Boston Local, May 22, 2013, *available at* http://boston.cbslocal.com/2013/05/22/i-team-commuters-say-they-are-being-ripped-off-in-mbta-parking-lots/ (Last visited on August 25, 2014) ("In a statement, the MBTA told the I-Team, '[t]he honor box system is by no means perfect, and that's why the MBTA offers other, more convenient options for paying parking fees.'"). *E.g.*, PayPoint Website, "PayByPhone is back in Boston," *available at* https://www.paypoint.com/en-gb/mobile-online/case-studies/mbta (Last visited on August 25, 2014); PayPoint Website, PayByPhone Frequently Asked

Questions, *available at* https://paybyphone.com/mbta/ (Last visited on August 25, 2014)

("For riders who use our honor box system, we encourage you to try this new convenient

mobile payment option. In addition to the convenience of paying for your parking from

your phone, *you also get the added benefit of being able to use your credit card, and the*

*advantage of online receipts*.") (emphasis added).

34.     Both the MBTA and LAZ Parking knew or should have known that LAZ

employees or others sometimes removed cash from the Honor Box.  The unreliability of

the system was an open secret.

35.     Both the MBTA and LAZ Parking knew or should have known that LAZ

employees sometimes issued tickets to cover for the money removed from the Honor Box.

Moreover, both the MBTA and LAZ Parking knew that in certain instances, LAZ

employees never placed a copy of an issued ticket on vehicle windshield in order to avoid

an investigation that would result if the vehicle owner complained.

36.     At various times, the MBTA and LAZ Parking permitted cash payment of

parking fines, after tickets were issued, at Honor Box lots.

37.     The oversight of the cash payment of fines suffered from the same

weaknesses as payments made for Honor Box parking fees.  Frequently, the cash

payment was not reported or, if it was, did not properly result in cancellation of the

parking fine in the MBTA's record-keeping systems.  In addition, those who paid fines in

cash received no receipt for their payment.

38.     At all relevant times, the MBTA and LAZ Parking have been aware that

their records of payments, tickets issued, and tickets paid at Honor Box lots were, at best,

seriously flawed.

39.     The MBTA and LAZ Parking have failed to maintain adequate records to prove that the alleged parking tickets the MBTA and Complus are now seeking to enforce were actually issued and/or left unpaid.

40.     When drivers have attempted to dispute their alleged tickets, the MBTA and LAZ Parking are unable to track the tickets and provide the driver a copy to prove that the tickets were issued and remain outstanding.

41.     These systematic flaws, particularly in a largely cash system with no provisions for receipts, prevent drivers from having a meaningful opportunity to dispute alleged parking tickets because they, based on the design of the system, do not have a copy of the ticket or proof of payment.

42.     Despite knowing of the chaos its Honor Box lots caused, the MBTA made a business decision to increase its revenue through its recent collection campaign.

43.     In July 2011, the MBTA increased the penalty for unpaid parking from $1.00 to $21.00.[3]

44.     To collect the alleged past due parking tickets, the MBTA hired an out-of-state third party collector, Complus, and does not provide meaningful oversight to ensure the collection process is fair and accurate.

45.     The collection letters Complus send to drivers are under the MBTA's letterhead and do not identify Complus as the collector; however, the website, mailing address and toll free number provided in the collection letters for drivers to contact to pay their tickets are for Complus.

---

[3] WBUR Website, *MBTA Hikes Parking Fines from $1 to $21, available at* http://www.wbur.org/2011/06/14/mbta-fines (Last visited on August 25, 2014).

46.     Complus is a "Parking Ticket Management business" that specializes in, among other things, "…collect[ing] on backlogged unpaid parking tickets…[and] recouping revenue once given up as uncollectable."[4]

47.     Complus gets paid for its services by getting a percentage of the money it collects on behalf of the MBTA for alleged parking tickets.[5] It is therefore incentivized to collect as much as it possibly can, and is doing so regardless of whether there is adequate proof that the drivers actually have legal responsibility for the violations, and the resulting fines or penalties.

48.     In the last ten months, in a collection campaign, Complus began sending collection letters to tens of thousands of vehicle owners, based on purported violations at Honor Box lots, that occurred between one and four years ago.

49.     The collection letters are intended to coerce drivers to pay by imposing fines of $20.00 per ticket.

50.     The collection letters are intended to coerce drivers to pay by threatening to tow or immobilized at their expense and/or by threatening to prevent drivers from renewing their vehicles' registrations at the RMV.

51.     The collection letters do not inform drivers that they can dispute or appeal the violations, rather, they just provide options for drivers to pay.

---

[4] Complus Data Innovations, Inc. Website, *available at*, http://www.complusdata.com/about-cdi/why-cdi/ (last visited on August 25, 2014).
[5] Complus Data Innovations, Inc. Website, *available at*, http://www.complusdata.com/about-cdi/why-cdi/ "Zero Up-Front Costs," "We only succeed if when you do!" (last visited on August 25, 2014).

52.     At all times relevant to this Complaint, the MBTA, LAZ Parking and Complus knew or should have known that they are seeking to collect in many instances for Honor Box violations that did not occur.

53.     At all times relevant to this Complaint, the MBTA, LAZ Parking and Complus knew or should have known that many of the fines and penalties which they are seeking to collect were paid in the Honor Box system but that the system did not record the payments.

54.     At all times relevant to this Complaint, the MBTA, LAZ Parking and Complus knew or should have known that drivers who made cash payments for parking never received a receipt for their payments and/or could no longer prove that cash payment was made.

55.     At all times relevant to this Complaint, the MBTA, LAZ Parking and Complus knew or should have known drivers who made cash payments for fines and penalties never received a receipt for their payments and/or could no longer prove that payment was made.

56.     At all times relevant to this Complaint, the MBTA, LAZ Parking and Complus knew or should have known, that in light of the passage of time, even drivers who made credit card payments or payment by check for parking violations may no longer have records sufficient to prove they paid.

57.     In general, the delay in seeking to enforce the parking violations further deprives drivers of the ability to sort out legitimate from the illegitimate penalties and fines, and hinders drivers' ability to retrieve or recall evidence they could use to dispute the alleged amounts the MBTA and Complus claim they owe.

58.     The MBTA also delegated authority to Complus to handle the dispute resolution process if drivers want to dispute or appeal their tickets and does not provide meaningful oversight to ensure the dispute resolution process is conducted properly.

59.     The purported dispute resolution process is a haphazard sham that yields wholly arbitrary and capricious results.[6]  In some instances, the MBTA and Complus refuse to waive tickets when drivers claim they paid for parking, while on other occasions, tickets are waived based on the same assertion; they are unable to provide access to copies of the underlying (in many instances – years-old) tickets upon drivers' request; sometimes they provide a reason why a driver's dispute is denied, sometimes they do not.

60.     The MBTA, LAZ Parking, and Complus, aware of their inability to establish a basis for the fines it seeks to collect, and instead have instituted an arbitrary and capricious policy where each driver that asserts a dispute with respect to multiple tickets gets one fine excused as a "courtesy", while other fines remain in place.

61.     The MBTA and Complus knows that dispute resolution system is a sham because it also maintains a secret process for waiving tickets if drivers are savvy enough to complain to the MBTA's upper management.

62.     The MBTA and Complus are unfairly placing the burden on drivers to prove a negative - that they do not owe the money.

---

[6] *See, e.g.*, Karen Anderson, I-Team Investigation Prompts Changes At MBTA Parking Lots, CBS Boston Local, June 13, 2013, *available at* http://boston.cbslocal.com/2013/06/13/i-team-investigation-prompts-changes-at-mbta-parking-lots/ (Last visited on August 25, 2014) (General Manager Beverly Scott told the I-Team that, "…since the crackdown, her staff has been flooded with appeals and she's working on finding the resources to get more people processing them…" "It doesn't make much sense to have an appeal process and then you can't really be responsive with it because you can't manage it.").

63.     The MBTA and Complus deliberately designed these coercive, haphazard and irreparably flawed collection and appeals systems, using deficient records received from LAZ Parking, in the hopes that drivers will pay the money they are demanding to avoid higher penalties, having their car towed or losing their vehicles' registration.

64.     These systematic shortcomings in Defendants' parking payment system deprive drivers of their right to a meaningful process by which to challenge the amounts the Defendants claim are due and owing, and deprive drivers of protected property rights in their money and vehicles without due process of law.

65.     The Defendants continue to engage in the scheme described herein even after members of the public called these problems to their attention, because their primary goal is to raise revenue rather than to enforce legitimate penalties. Similarly, Defendants conduct has continued despite news stories identifying many of the issues raised in this complaint.

66.     As a result of Defendants' conduct, hundreds or thousands of Massachusetts drivers and will be forced to pay money they do not owe or risk losing use of their vehicles.

## VI.     PLAINTIFF FACTS

67.     Plaintiff repeats and re-alleges every allegation above as if set forth herein in full.

68.     Plaintiff, Richard Meyer, ("Mr. Meyer") resides in Brockton, Massachusetts and regularly parked at the Middleborough/Lakefield commuter rail parking lot ("Campello Station") between approximately 1998 and 2012.

69.     Mr. Meyer drove two different cars during the time that he parked at Campello Station.  He still owns and registers both vehicles in Massachusetts.

70.     At all time relevant to this Complaint, the Campello station has used the Honor Box system and is managed by LAZ Parking.[7]

71.     During this time, Mr. Meyer paid for parking for his vehicles using the MBTA's Honor Box system, which costs $4.00 per day.

72.     There was no mechanism available for Mr. Meyer to obtain a receipt or other proof that he paid using the Honor Box system.

73.     On some occasions, when Mr. Meyer did not have exact change for the Honor Box, or the train was arriving and he was in a rush to catch it, he was unable to pay using the Honor Box and received a parking violation on his vehicle.

74.     When Mr. Meyer received a parking violation, he paid the $4.00 violation and the $1.00 fine (for a total of $5.00) immediately in cash by putting the money in the envelope provided on his vehicle and then putting the envelope in the box located at Campello Station designated for people to make their violation payments.

75.     There was no mechanism available for Mr. Meyer to obtain a receipt or other proof that he paid the parking violations when he paid them on site at Campello Station.

76.     There were some instances when Mr. Meyer received a parking violation but had paid for parking using the Honor Box.

---

[7] MBTA Website, *available at* http://www.mbta.com/riding_the_t/parking/?id=25212&strL=true&rn=StationNameC#RATESC (last visited on August 25, 2014).

77.     In November, 2013, for the first time since Mr. Meyer received his last alleged parking violation more than a year earlier, Mr. Meyer received two collection letters titled, "Delinquency Notices" from the "Massachusetts Bay Transportation Authority," listing an address at: "Payment Processing, PO Box 2070 Tarrytown, NY 10591-9070," for his two different vehicles listing a total of approximately 30 alleged past due parking violations and claiming that he has a $750.00 outstanding balance.

78.     True and correct copies of the November, 2013 collection letters are attached as Exhibits 1 and 2.

79.     This was the first time Mr. Meyer learned that the MBTA believed he had outstanding parking violations.

80.     The November, 2013 collection letters provide the date of the alleged parking violation – some dating back as far as 2011 – but do not indicate the time at which the alleged tickets were issued. Exhibits 1 and 2.

81.     The November, 2013 collection letters list a "Fee & Surcharge" of $5.00 per violation, and a fine of $20.00 per violation, for a total amount due of $25.00 for each violation. Exhibits 1 and 2.

82.     The November, 2013 collection letters offer a "one-time settlement on overdue parking fines," and advises Mr. Meyers to pay the full amount listed in the "Total Due if Paid or Postmarked by 12/26/13 box." The settlement offer in each collection letter is $75.00. Exhibits 1 and 2.

83.     The November, 2013 collection letters threaten that Mr. Meyer's vehicles may be towed or immobilized at his expense, and/or he may not be able to renew his registrations at the RMV if he does not pay the total amount due.

84.     The November, 2013 collection letters do not inform Mr. Meyer that he can dispute or appeal the violations.

85.     In April, 2014, Mr. Meyer received additional collection letters titled "Violation Notice for Non-Payment," from the MBTA at the same Tarrytown address.

86.     True and correct copies of the April 2014 collection notices are attached as Exhibits 3 and 4.

87.     The April, 2014 collection letters list a "Parking Fee" of $4.00, a "S/C Fine" of $41.00, for a total of $45.00 owed on the majority of the violations. For some violations, the "S/C Fine" is $21.00, for a total amount due of $25.00. The amount the MBTA claims Mr. Meyer owes in the two letters totals $950.00. Exhibits 3 and 4.

88.     The April, 2014 collection letters indicate that they are the third notice sent to Mr. Meyers but he has only received two notices. Exhibits 3 and 4.

89.     The April, 2014 collection letters inform Mr. Meyer's that the third notice means that: "…[his] vehicle registration is now marked for non-renewal at the RMV. An additional $20 RMV fee has been applied per violation. The MBTA may also refer this to a collection/credit agency for payment." Exhibits 3 and 4.

90.     The April, 2014 collection letters do not inform Mr. Meyer that he can dispute or appeal the violations. Exhibits 3 and 4.

91.     Mr. Meyer does not have 30 outstanding parking violations.

92.     However, because the MBTA's parking payment system at Campello station provided no mechanisms for Mr. Meyer to obtain a receipt or other proof of his payments, and because so much time has passed since Mr. Meyer's alleged past due violations, Mr. Meyer does not have any evidence to prove he paid.

93.     Mr. Meyer learned for the first time that he has an opportunity to dispute the parking violations when his counsel investigated Complus' website listed on the collection letters, which provides an online dispute process.

94.     On June 27, 2014, Mr. Meyer appealed five of the parking violations listed on one of the collection letters using Complus' website, www.parkingticketpayment.com/mbta. Mr. Meyer explained in his appeal that he had paid the required fine for the violation on the day he received it.

95.     On July 9, 2014, the MBTA and Complus sent Mr. Meyer responses to four of his five appeals.

96.     The MBTA and Complus denied three of Mr. Meyer's appeals, informing him only that, "[t]here is no payment confirmed for this violation."

97.     True and correct copies of the three denial letters Mr. Meyer received are attached as Exhibits 5, 6 and 7.

98.     The denial letters also state that, [a]ll fines and penalties stand…[t]o avoid additional penalties, your payment must be paid/postmarked by 07/23/2014….and mailed to MBTA Processing Center, P.O. Box 2070 Tarrytown, NY 10591-9070." Exhibits 5, 6 and 7.

99.     The denial letters refer Mr. Meyer to LAZ Customer Service for questions. Exhibits 5, 6 and 7.

100.     Citing no reason, the MBTA and Complus dismissed the fourth ticket Mr. Meyer appealed, stating, "[t]his is a one-time courtesy void. We will not dismiss violations in the future." On information and belief this was done as a matter of policy

because MBTA and Complus understand that they have no legitimate basis to sort out valid disputes from invalid disputes.  The policy is arbitrary and capricious.

101.    A true and correct copy of the dismissal notice is attached as Exhibit 8.

102.    To date, Mr. Meyer has not received a response to his fifth appeal from the MBTA or Complus.

103.    Complus' website also invites drivers to view their parking violations by entering the ticket numbers listed on the collection letters.

104.    When Mr. Meyer requested to view his alleged parking violations through the website, he received a response for each of them stating that the MBTA had found the ticket in its system, but that there was no image of the ticket available for Mr. Meyer to view.  The form of the relevant records was not explained.  On information and belief, none of the Defendants maintain copies of the original tickets.

105.    The MBTA and Complus are coercing Mr. Meyer to pay money for alleged parking violations nearly two years old but will not provide Mr. Meyer evidence that the ticket was ever issued in the first instance.

106.    The registrations on Mr. Meyer's vehicles are set to expire on October 14, 2014 and February 16, 2015.

107.    Ms. Meyer is now at risk of not being able to renew either of his vehicles' registrations when they come due and having his vehicles towed if he does not pay the $950 that MBTA and Complus have received.

108.    Mr. Meyer and his family need the vehicles for daily use, including transportation to their jobs, for grocery shopping, and other household necessities.

## VII.    CLASS ALLEGATIONS

109.    Plaintiff repeats and re-allege every allegation above as if set forth herein in full.

110.    This class action is brought by Plaintiff on behalf of himself and all individuals in Massachusetts who:

      a.    Parked in one or more Honor Box commuter rail parking lots managed by LAZ Parking ("Class Lot");

      b.    Were sent a collection letter from the MBTA and/or Complus on or after November 1, 2013 for one or more past due parking violation incurred at a Class Lot; and

      c.    Whose violation or violations have not been waived or dismissed.

111.    Plaintiff sues on his own behalf and on behalf of a class of persons under Federal Rule Civil Procedure 23(a) and (b)(2).

112.    Plaintiff does not know the exact size or identities of the members of the proposed class, since such information is in the exclusive control of Defendants. Based on the approximate 27,000 collection letters the MBTA and Complus sent in November 2013,[8] Plaintiff believes that the class encompasses hundreds or thousands of individuals whose identities can be ascertained from the Defendants' books and records. In addition, because the class consists of drivers who reside across Massachusetts, the class is such that joinder of all members is impracticable.

---

[8] Martine Powers, *Tips For Fighting Parking Violations, Boston Globe*, December 22, 2013, *available at,* http://www.bostonglobe.com/metro/2013/12/22/commuters-fight-mbta-parking-lot-violation-notices/h3ykD06pX1aVtn05njmSqN/story.html (last visited on August 25, 2014) (reporting that, the MBTA sent "just over 27,000" collection letters in November 2013).

113.    All members of the class have been subject to and affected by the same conduct. Plaintiff and every class member parked at a Class Lot and received a demand for payment by form collection letters from the MBTA and Complus. Plaintiff and class members are currently at risk of losing use of their vehicles by towing, immobilization and/or registry non-renewal if they do not pay the money the MBTA and Complus are demanding.

114.    There are questions of law and fact that are common to the class. These questions include, but are not limited to, the following:

a.    whether the Defendants have sufficient records to validate the amounts the MBTA and Complus are seeking to collect;

b.    whether the Defendants' conduct violates Plaintiff's and class members' right to procedural due process under the Fourteenth Amendment;

c.    whether the Defendants' conduct deprives Plaintiff and class members of their Fourteenth Amendment Rights in violation of 42 U.S.C. 1983;

d.    whether Defendants are liable for abuse of process;

e.    whether the Court can enter an injunction to prevent the MBTA and Complus from depriving Plaintiff and class members of their due process rights and property;

f.    whether the Court can enter an injunction to prevent Defendants from continuing their abuse of process and conversion; and

g.    whether the Court can enter an injunction to prevent the MBTA and Complus from collecting on Plaintiff's and class members' parking tickets, charging fines and penalties, marking vehicles' registrations for non-renewal at the RMV, towing and/or immobilizing vehicles, and provide for incidental monetary relief related to the injunction.

115.    The claims of the named Plaintiff are typical of the claims of the class and do not conflict with the interests of any other members of the class in that the Plaintiff

and other members of the class were subject to the same conduct – they all parked in a

Class Lot, received collection letter(s) from the MBTA and Complus during the same

time period, and were subject to alleged improper parking enforcement scheme and

collection practices.

116.    The named Plaintiff will fairly and adequately represent the interests of

the class. Mr. Meyer is committed to the vigorous prosecution of the class' claims and

has retained attorneys who are qualified to pursue this litigation and have experience in

plaintiff class actions.

117.    The Defendants have acted or refused to act on grounds that apply

generally to the Plaintiff and the class so that final injunctive relief or corresponding

declaratory relief is appropriate for the class as a whole.

118.    This putative class action meets both the requirements of Fed. R. Civ. P.

23(a) and 23(b)(2).

### VIII.   CAUSES OF ACTION

### COUNT ONE
**(Civil Rights-Violation of the U.S. Constitution's Fourteenth Amendment Right to
Due Process Against the MBTA and Complus)**

119.    Plaintiff repeats and re-alleges every allegation above as if set forth herein

in full.

120.    The Fourteenth Amendment of the United States Constitution provides, in

relevant part, that no state shall "deprive any person of…property, without due process of

law."

121.    The MBTA and Complus are acting under the color of state law. Section

III ("Parties"), ¶¶7-16, *supra*.

122.    Plaintiff and the class have protected personal property rights in their money and their vehicles.

123.    Through their coercive collection campaign based on the faulty parking payment enforcement scheme described herein, the MBTA and Complus are unlawfully threatening to deprive and depriving Plaintiff and class members of their money and use of their vehicles without due process.

124.    Plaintiff and the class are at imminent risk of being harmed by the Defendants' conduct because if they do not pay the fines and penalties Defendants have imposed on them and are seeking to collect, they will be deprived of the use of their vehicles without due process.

**COUNT TWO**
**(Civil Rights- Violation of the 42 U.S.C. 1983 Against the MBTA and Complus)**

125.    Plaintiff repeats and re-alleges every allegation above as if set forth herein in full.

126.    To prove a violation of 42 U.S.C. §1983, Plaintiff and the class must demonstrate that the Defendants are threatening to deprive or depriving him of a Federal constitutional or statutory right while acting under color of state law.

127.    The MBTA and Complus are acting under the color of state law. Section III ("Parties"), ¶¶7-16, *supra.*

128.    The MBTA and Complus are depriving Plaintiff and class members of their Fourteenth Amendment due process rights by attempting to enforce alleged past due parking violations through their coercive collection campaign that is based on the faulty parking payment enforcement scheme described herein, without a meaningful dispute mechanism in place.

129.    Plaintiff and class members are damaged by the MBTA's and Complus' conduct because they are at risk of losing money and use of their vehicles while being deprived of their Fourteenth Amendment right to due process.

## COUNT THREE
### (Tort - Abuse of Process Against All Defendants)

130.    Plaintiff repeats and re-alleges every allegation above as if set forth herein in full.

131.    M.G.L. c. 90; §20A provides that any officer, "…who takes cognizance of a violation of any provision of any rule, regulation, order, ordinance or by-law regulating the parking of motor vehicles…[shall]…give to the offender a notice to appear before the parking clerk of the city or town wherein the violation occurred…".

132.    The notice to appear (a/k/a parking ticket) required by M.G.L. c. 90 §20A is a summons that constitutes process under Massachusetts law.

133.    Defendants are using parking tickets abusively to coerce Plaintiff and class members to pay money they do not owe, and to impose unwarranted fines and penalties.

134.    Defendants use of process, by the means described in this Complaint, amounts to a scheme by the MBTA to raise revenues from drivers who are not legally obligated to pay and to raise profits for Complus and LAZ Parking.

135.    Defendants' abuse of process threatens to harm Plaintiff and class members either by forcing them to pay money they do not owe and/or by depriving them of use of their vehicles.

## COUNT FOUR
### (Tort – Conversion Against All Defendants)

136.    Plaintiff repeats and re-alleges every allegation above as if set forth herein in full.

137.    Defendants are intentionally or wrongfully exercising control or dominion over Plaintiff's and class members' money by seeking to collect amounts that are not validly due and by imposing additional penalties when Plaintiff and class members do not pay.

138.    Defendants have no right of possession over Plaintiff's and class members' money because they money is not owed.

139.    Defendants' intentional exercise of dominion or control over Plaintiff's and class members' money seriously interferes with Plaintiff's and class members' right to use the money and its appreciation value is reduced when not in Plaintiff's and class members' possession.

140.    Defendants are intentionally or wrongfully exercising control or dominion over Plaintiff's and class members' vehicles by placing vehicle registrations on hold at the RMV and towing and/or immobilizing vehicles when Plaintiff and class members do not pay the unlawful amounts Defendants are demanding.

141.    Defendants have no right of possession over Plaintiff's and class members' vehicles because the money Defendants are demanding as a lever to take possession is not owed.

142.    Plaintiff and the class members have been harmed by Defendants' intentional exercise of dominion or control over Plaintiff's and class members' money

and vehicles.  Plaintiffs and the class members may suffer additional harm in the future unless the Defendant is enjoined from continuing the conduct complained of.

**COUNT FIVE**
**(Injunctive Relief Against MBTA and Complus)**

143.    Plaintiff repeats and re-alleges every allegation above as if set forth herein in full.

144.    MBTA and Complus are legally prevented from depriving individuals of their property without due process of law.

145.    Defendants are threatening to deprive Plaintiff and the class of money and the use of their vehicles by seeking to collect and collecting money they cannot prove is owed and which Plaintiff and class members no longer have a fair opportunity to dispute due to Defendants' flawed parking payment systems and the passage of time.

146.    As a result of Defendants' conduct, Plaintiff and class members who have not paid the amounts contained in the collection letters and have not had the alleged parking tickets dismissed or waived are at risk of further unlawful collection activity by the MBTA and Complus, and of losing the use of their vehicles because the vehicles are currently subject to towing, immobilization and/or registration non-renewal.

147.    As such, Plaintiff and the class will be irreparably injured.,

148.    Plaintiff and the class do not have a plain, adequate, speedy, or complete remedy at law to address the wrongs alleged in this Complaint, and will suffer irreparable injury as a result of Defendants' conduct unless injunctive relief in granted.

149.    Plaintiff and the class are therefore entitled to a preliminary and permanent injunction enjoining the MBTA and Complus from continuing to harm them by threatening to unlawfully deprive them of their property, in particular, enjoining the

MBTA and Complus to stop collection activity on Plaintiff and class members, and to prevent Defendants from towing or immobilizing their vehicles, preventing them from renewing vehicles' registrations and to pay damages incidental to the injunction.

## COUNT SIX
### (Injunctive Relief Against all Defendants)

150.    Plaintiff repeats and re-alleges every allegation above as if set forth herein in full.

151.    Defendants are legally prevented from using process (i.e. parking tickets) for an ulterior or illegitimate purpose.

152.    By their abuse of process, Defendants are using parking tickets to coerce Plaintiff and class members to pay money they do not owe, to impose illegitimate fines and penalties, and to prevent drivers from using their vehicles.

153.    As a result of Defendants' abuse of process, Plaintiff and class members are at risk of paying money they do not owe and/or losing use of their vehicles.

154.    Absent injunctive relief, Plaintiff and the class will be irreparably injured in the future because they will either have to pay the fines and penalties Defendants are demanding or lose use of their vehicles.

155.    Plaintiff and the class do not have a plain, adequate, speedy, or complete remedy at law to address the wrongs alleged in this Complaint, and will suffer irreparable injury as a result of Defendants' conduct unless injunctive relief in granted.

156.    Plaintiff and the class are therefore entitled to a preliminary and permanent injunction enjoining the Defendants from continuing its abuse of process and to pay damages incidental to the injunction.

## COUNT SEVEN
### (Declaratory Judgment Under 28 U.S.C. §2201 Against All Defendants)

157.    Plaintiff repeats and re-alleges every allegation above as if set forth herein in full.

158.    Plaintiff and the class raise an actual controversy as to whether Defendants, by the conduct described herein, are in violation of the Fourteenth Amendment, 28 U.S.C. §1983, and whether they have committed and abuse of process and/or conversion under Massachusetts' law.

159.    The Court has the authority under 28 U.S.C. §2201 to make these determinations.

160.    Plaintiffs are therefore entitled to a declaratory judgment on each of these claims, as well as the injunctive relief and incidental damages to the injunction that they seek.

## IX.    PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully requests the following relief on behalf of himself and the class:

1.    Certify this case as a class action for injunctive relief under Fed. R. Civ. P. 23(a) and (b)(2) and appoint the named Plaintiff to be class representative and his counsel to be class counsel;

2.    Grant a preliminary and permanent injunction enjoining the MBTA and Complus from:

      a.    seeking to collect and collecting Plaintiff's and class members' alleged past due parking violations;

      b.      imposing penalties and fines on Plaintiff and class members, including, without limitation, RMV fines;

      c.      marking Plaintiff's and class members' vehicles' registration for non-renewal at the RMV;

      d.      towing and/or immobilizing Plaintiff's and class members' vehicles; and

      e.      providing for damages incidental to the injunction.

3.      Grant a preliminary and permanent injunction enjoining the Defendants from continuing their abuse of process and providing for damages incidental to the injunction.

4.      Enter a judgment declaring that the acts and practices of the MBTA and Complus complained of herein violate the Fourteenth Amendment and 42 U.S.C. §1983.

5.      Enter a judgment declaring that the acts and practices of the Defendants complained of herein constitute a violation of civil rights, an abuse of process and/or conversion.

6.      Award the costs of this action, including reasonable attorneys' fees and costs.

7.      Grant Plaintiff and the class such other and further relief as this Court finds necessary and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Dated: August 26, 2014

Respectfully submitted,

*/s/ Shennan Kavanagh*
Gary Klein (BBO No. 560769)
Shennan Kavanagh (BBO No. 655174)

Corinne Reed (BBO No. 687621)
**KLEIN KAVANAGH COSTELLO, LLP**
85 Merrimac Street, 4th Floor
Boston, Massachusetts 02114

Phone: (617) 357-5500
Fax: (617) 357-5030
Email: klein@kkcllp.com
Email: kavanagh@ kkcllp.com
Email: reed@kkcllp.com